AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Northern District of California

**FILED**

Apr 21 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

|  |  |
|---|---|
| United States of America | ) |
| v. | ) |
| JORGE TORRES a/k/a Jorge Torres-Velasquez; Jorge Guillermo Galindo Torres | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
| *Defendant(s)* | ) |

Case No.   3:26-mj-70546 AGT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___March 19, 2026___ in the county of ___San Francisco___ in the ___Northern___ District of ___California___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi) and (viii) | Knowing possession with intent to distribute fentanyl and methamphetamine |

This criminal complaint is based on these facts:

See attached Affidavit of Megan Dunlap, Special Agent with the Federal Bureau of Investigation

☑ Continued on the attached sheet.

_____/s/_____
*Complainant's signature*

Megan Dunlap, Special Agent FBI
*Printed name and title*

Approved as to form ___*Nathan Theobald*___
AUSA ___Nathan Theobald___

Sworn to before me by telephone.

Date: ___4/20/2026___

_____
*Judge's signature*

City and state:   ___San Francisco, CA___   Hon. Alex G. Tse, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN
ARREST WARRANT AND CRIMINAL COMPLAINT**

I, Megan Dunlap, a Special Agent with the Federal Bureau of Investigation ("FBI"), having been sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging JORGE TORRES ("TORRES"), a/k/a "Jorge TORRES-Velasquez", "Jorge Guillermo Galindo TORRES," with

    a. knowingly possessing with intent to distribute a mixture and substance containing over 40 grams of fentanyl, a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi), and

    b. knowingly possessing with intent to distribute a mixture and substance containing over 50 grams of methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii),

on or about March 19, 2026, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from law enforcement/government records and databases, and information obtained from other law enforcement agents/officers and witnesses. Where statements made by other individuals (including other law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part.

1

Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3.     Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4.     I am a Special Agent of the FBI.  I have been employed by the FBI since December 2023. I am assigned to the San Francisco Division Violent Crime Squad.  I am responsible for investigating Hobbs Act robberies, carjackings, bank robberies, crimes on the high seas, and other violent crimes with a federal nexus.

5.     I am a graduate of the FBI's New Agent Training program.  I completed training at the FBI Academy in Quantico, Virginia.  While at the Academy, I received training in various law enforcement techniques including evidence collection, interviewing witnesses and victims, legal procedure and process, source management, investigative technology, firearms and tactical training, and defensive tactics.  I also received training on the enforcement of controlled substances offenses.

6.     Throughout my law enforcement career, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local investigators who have written affidavits for, or participated in, the application for an execution of search and arrest warrants over the course of their careers.

7.	I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7).  I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including controlled substance offenses, robberies, car jackings, bank robberies, threats to life, kidnapping, assault, firearms and explosive offenses, gang-related crimes, and murder.

8.	I am familiar with the facts and circumstances surrounding this investigation, both from my own investigative activities and from information obtained from law enforcement officers and others with personal knowledge of the facts.  This affidavit does not set forth all my knowledge about this matter; it is intended only to show that there is sufficient probable cause for the requested warrant.

## APPLICABLE STATUTES

9.	Under 21 U.S.C. § 841(a)(1), it is unlawful for any person to knowingly or intentionally distribute or possess with intent to distribute a federally controlled substance. Under 21 C.F.R. § 1308.12(c), fentanyl and methamphetamine are Schedule II controlled substances.

10.	A violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi) imposes additional mandatory sentencing if the offender possessions with the intent to distribute a mixture and substance containing 40 grams or more of fentanyl.

11.	A violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii) imposes additional mandatory sentencing if the offender possessions with the intent to distribute a mixture and substance containing 50 grams or more of methamphetamine.

3

## STATEMENT OF PROBABLE CAUSE

12.     On March 19, 2026, the San Francisco Police Department ("SFPD") conducted a buy bust operation in the area of Taylor Street and Eddy Street in San Francisco, California. This area is known to law enforcement as an area where drugs are bought and sold, and therefore it is an area of heightened enforcement.

13.     SFPD designated both undercover buy and close cover officers for the operation. Undercover buy officers conduct the purchase of controlled substances while close cover officers stay in close proximity for investigative and operational purposes. An arrest team was also designated.

14.     SFPD made "before" copies of the Marked City Funds ("MCF") used in the operation and "after" copies of MCF used in the operation:

 

*Photos of MCF used during the operation*

15.     At approximately ten minutes after midnight, 12:10 a.m., two designated Undercover Buy SFPD Officers walked eastbound on Eddy Street to southbound on the 100 block of Taylor Street. Alongside the Taylor Street side of 201 Eddy Street, Undercover Officers

walked by an individual later identified as TORRES. As they walked by, TORRES called out, "Iso."

16.    The Undercover Officers recognized TORRES's statement "iso" as an advertisement to sell fentanyl, and they therefore engaged in conversation with TORRES. The Undercover Officers negotiated the purchase of one (1) gram of fentanyl from TORRES for $40.00. TORRES acknowledged the Undercover Officers and turned into a doorway. TORRES crouched and produced a digital scale.

17.    TORRES then produced suspected fentanyl and weighed a portion of it on the scale. TORRES stood from his crouched position and took the suspected fentanyl off the scale and placed it directly into one of the SFPD Undercover Officer's hand.

18.    The Undercover Officers provided TORRES with two (2) twenty-dollar MCF notes of United States Currency, displayed the predetermined successful "buy" signal to the SFPD Close Cover Officers, and walked away from the area.

19.    The Close Cover Officers broadcast TORRES description as a male with no beanie, no mask, and that he was wearing a black jacket, backpack, and dark colored pants. The Close Cover Officers advised the Arrest Team to move in and place TORRES under arrest.

20.    As the Arrest Team moved in, TORRES began to run southbound on the west sidewalk of Taylor Street towards Turk Street. SFPD Officers observed TORRES and began running towards him, northbound on Taylor Street from Turk Street. Several uniformed officers involved in the operation also gave chase and successfully took TORRES into custody near 111 Taylor Street.

21.    The Close Cover Officers advised the correct subject had been taken into custody. TORRES's identity was confirmed via SF Mugshot.

5



*Photo of TORRES taken after the arrest by SFPD*

22. SFPD searched TORRES, and the following items were found on TORRES's person and in the backpack he was carrying:

     a. Two (2) $20 MCF dollar bills used in the undercover purchase;

     b. $1,715 in United States Currency;

     c. Suspected Methamphetamine;

     d. Suspected Fentanyl;

     e. Suspected Cocaine Base; and,

     f. a Digital Scale.

23. The suspected controlled substances were weighed and tested by an SFPD Officer who had completed a 40-hour POST certified Basic Narcotics Training. The presumptive findings from the TruNarc testing machine were as follows:

     a. the suspected methamphetamine weighed 95.1 grams gross and tested presumptive positive for methamphetamine as shown below:

6

 

b.    the suspected fentanyl purchased by the Undercover Officers weighed 2.2

grams gross and tested presumptive positive for fentanyl as shown below:



     c.     the suspected fentanyl found on TORRES weighed 45.9 grams gross and

tested presumptive positive for fentanyl, as shown below:

 

     d.     the suspected cocaine base, also known as "crack," weighed 7.3 grams

gross and tested presumptive positive for cocaine base, as shown below:



## CONCLUSION

24.     Based upon my training and experience, statements provided by the Undercover Officers, the Cover Officers confirming that TORRES was the suspect who sold suspected fentanyl to the Undercover Officers, TORRES being in a high crime area known specifically for drug sales, TORRES possessing the MCF bills used in the operation, TORRES possessing additional methamphetamine, fentanyl, cocaine base, a digital scale, and $1,715 in United States currency, and the weights of the controlled substances, there is probable cause to conclude that on or about March 19, 2026, in the Northern District of California, TORRES violated 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi) and (viii), by knowingly possessing over 40 grams of a mixture and substance containing fentanyl and over 50 grams of a mixture and substance containing methamphetamine with the intent to distribute the fentanyl and methamphetamine.

25.     Accordingly, I respectfully request that the Court issue a criminal complaint and warrant for TORRES's arrest.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.


_____/s/_____
Megan Dunlap
Special Agent
Federal Bureau of Investigation


Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 20th day of April 2026.

_____
HON. ALEX G. TSE
United States Magistrate Judge